**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joanne Knapper, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Cox Communications, Inc.,<br><br>Defendant. | No. CV-17-00913-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion to Stay (Doc. 40), Plaintiff's Response (Doc. 47), and Defendant's Reply (Doc. 51). For the following reasons, the motion will be **denied**.[1]

### I. Background

On March 28, 2017, Plaintiff filed a complaint against Defendant for violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. 1.) Plaintiff alleges, on behalf of a class, that Defendant "routinely violates [the TCPA] by using an automatic telephone dialing system [or an artificial or prerecorded voice] to place non-emergency calls to numbers assigned to a cellular telephone service, without prior express consent." (Doc. 1 ¶¶ 3, 11.) In other words, Defendant allegedly "places autodialed calls to wrong or reassigned telephone numbers." (Doc. 1 ¶ 3.)

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

On June 6, 2018, Defendant filed a motion to stay this case. (Doc. 40.) On July 2, 2018, Plaintiff filed her response. (Doc. 47.) On July 16, 2018, Defendant filed its reply. (Doc. 51.) Both parties have filed supplemental authority notices. (Docs. 48, 52, 62, 65, 68, 80.)

## II. Discussion

Defendant argues that this case should be stayed in light of *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), and the Federal Trade Commission's ("FCC") subsequent Public Notice. (Doc. 40.) It argues that the FCC should soon rule on what constitutes an automatic telephone dialing system ("ATDS"), a "called party," in terms of reassigned number liability, and a possible good faith defense pursuant to the TCPA, all of which bear directly on its potential liability. (Doc. 40.) It argues that it would be prejudiced if this case were to move forward without guidance from the FCC because part of its defense is that (1) it did not use regulated ATDS technology when making the calls at issue, (2) Plaintiff is not a "called party," and (3) it should be exempt from liability for good faith calls to reassigned numbers. (Doc. 40.) It bases its request for a stay on the primary jurisdiction doctrine and the Court's inherent authority to manage its docket. (Doc. 40.)

Plaintiff argues that this Court should not issue a stay pursuant to its inherent authority because (1) Defendant has not established a clear case of hardship, (2) Plaintiff and her putative class will be prejudiced, and (3) judicial economy will not be served. (Doc. 47 at 4-7.) Plaintiff argues that primary jurisdiction is also not a basis for the issuance of a stay because the definitions at issue here do not require any specialized expertise or fact-finding abilities by the FCC. (Doc. 47 at 8.) She also argues that a stay could be "indefinite" because there is no guarantee that the FCC will issue its guidance in the near future or that any guidance will be directly on point to the issues in this case. (Doc. 47.)

## III. Analysis

### A. Primary Jurisdiction Doctrine

Primary jurisdiction is reserved for a "limited set of circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that

Congress has committed to a regulatory agency." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)) (internal quotations omitted). In considering primary jurisdiction, a court considers: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* (quoting S*yntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002)). "Efficiency" is the deciding factor in whether to invoke primary jurisdiction. *Id.* (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) (citing 47 U.S.C. § 227(b)(2)). Therefore, the FCC has interpretative authority over the TCPA and its accompanying regulations. *See Barrera v. Comcast Holdings Corp.*, No. 14-CV-00343-TEH, 2014 WL 1942829, at *2 (N.D. Cal. May 12, 2014) (quoting *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010)). Thus, in determining the stay factors, the second through fourth prongs are met. The issue here is whether there is an issue that the FCC needs to resolve. The Court finds there is not.

### 1. ATDS

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), ruled on the definition of an ATDS within the meaning of the TCPA. Defendant argues that the Ninth Circuit's ruling is an outlier and inconsistent with the binding authority of *ACA International*. (*See* Doc. 68 at 1.) The Court is not persuaded. First, *ACA International* did not make any determinations after it set aside the FCC's 2015 Declaratory Order as it related to an ATDS and reassigned number liability. The *Marks* court explained that *ACA International* overturned the FCC's 2015 Declaratory Ruling as to an ATDS, which also overturned "any prior FCC rules that were reinstated by the 2015 order." *Id.* at 1049. As such, the *Marks* court reasoned that the FCC's relevant rulings were no longer binding law.

*Id.* The court then engaged in its own statutory analysis and ultimately defined what constituted an ATDS. *Id.* at 1052. Therefore, *Marks* represents binding law in this Circuit. Consequently, there is no matter of first impression or of such complexity inhibiting this Court from proceeding.

### 2. Good Faith Defense

As Defendant points out, "the FCC has adopted new rules to establish a reassigned numbers database and create a safe harbor from TCPA liability for inadvertent calls to recycled numbers." (Doc. 81 at 2.) In its recent Report and Order, the FCC determined the availability of a good faith defense. It stated that callers will be shielded from TCPA liability if they rely on the new database to learn if a number has been reassigned. *See* Second Report and Order, *In re Advanced Methods to Target and Eliminate Unlawful Robocalls*, CG Docket No. 17-59, FCC 18-177, (Dec. 12, 2018), *available at* https://docs.fcc.gov/public/attachments/FCC-18-177A1.pdf. The FCC went on to state that it considered not adopting any safe harbor or whether it should adopt a more expansive version. *See id.* at p. 45 ¶ 37. Though within the context of providing a safe harbor to those callers who would avail themselves of this new database, the FCC's analysis necessarily indicates that there would likely be no good faith defense available to callers unless they used the new database. *See id.* at p. 19-22, 30, 46.

Given the FCC's recent Report and Order, the Court finds that the applicability of a good faith defense is no longer an issue in this case. To the extent the FCC should issue a new and different rule addressing reassigned liability by way of a defense, the Court finds that that rule, along with the one recently adopted, would likely be applied prospectively, and, thus, would have little effect on this case addressing past harm. *See MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1152 (9th Cir. 2008) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)) (stating that "administrative rules will not be construed to have retroactive effect unless their language requires this result."). This cuts in favor of denying a stay because the interests of consistency and uniformity would not be furthered.
///

### 3. "Called Party"

As to the "called party" issue, *ACA International* held that the FCC's interpretation of "called party" was a permissible one and, thus, did not overrule it. *See ACA Int'l*, 885 F.3d at 706 (holding that the seventh circuit's analysis of a "called party," defined as the current subscriber, and not the intended recipient, was persuasive in that it supported the Commission's same interpretation). Therefore, there is no matter here that needs to be decided by the FCC.

Even if the D.C. Circuit had set aside the FCC's interpretation of a "called party," the Court finds that it is capable of deciding that issue. *See Abrantes v. Northland Grp., Inc.*, No. 14-CV-05311-YGR, 2015 WL 1738255, at *3 (N.D. Cal. Apr. 13, 2015) (stating that district courts have routinely analyzed the term "called party" within the meaning of the TCPA and are well-suited to resolve this kind of statutory interpretation); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018) (acknowledging that, though not binding law, the courts in this circuit have addressed the "called party" issue, which would shed light on a court's interpretation of "how the TCPA treats liability for reassigned numbers"). Simply because Congress has delegated implementing authority over the TCPA to the FCC, including the authority to determine the meaning of "called party," such authority does not preclude a court from engaging in statutory construction. *See Larson v. Harman Mgmt. Corp.*, No. 1:16-CV-00219-DAD-SKO, 2018 WL 6459964, at *4 (acknowledging that there "may be some risk of inconsistent rulings involving specific issues not addressed by the court in *Marks*, [but] such is the case in every developing area of the law."); *Peralta v. Rack Room Shoes, Inc.*, No. 18-3738, 2018 WL 6331798, at *8 (stating that the court was capable of adjudicating the parties' dispute by applying the TCPA and other applicable law). Thus, the Court finds that, regardless of *ACA International*'s treatment of the term "called party," determining this issue is not so particularly complex or technical that this case must be stayed pending the FCC's potentially contrary ruling on that issue.

Additionally, though Commissioner O'Rielly, in commenting on the FCC's recent Report and Order, indicated that he had been promised "a comprehensive redo of [the FCC's] TCPA rules will be considered promptly," there is no indication as to what constitutes "promptly" and when the "redo" would be finalized and released. *See* Report and Order, p. 48. Nor is there any guarantee the FCC will actually address—and depart from—the FCC's interpretation of "called party." *See id.* In sum, there is simply no telling if and when the FCC might rule on this issue and if that ruling would be appealed. *See Larson*, 2018 WL 66459964, at *5 (noting that the FCC's 2015 Declaratory Ruling was appealed, thus extending the delay in stayed cases awaiting guidance from its ruling). To the extent Defendant is concerned that the FCC will issue a decision that is inconsistent with this Court's ultimate decision on the relevant issues (*see* doc. 51 at 6, 8), that risk does not weigh in favor of a stay because the FCC's interpretation of "called party" still stands. Even if it did not, courts have already heavily weighed in on the meaning of "called party," thus allowing this Court to engage in its own statutory construction analysis.[2]

Lastly, the Court acknowledges that the parties have already conducted discovery, and, thus, there is little prejudice to Plaintiff in terms of document retention. However, the Court finds that there is little left open following *ACA International*. The Ninth Circuit has ruled on what constitutes an ATDS, the FCC's and various courts' interpretation of "called party" was not disturbed by *ACA International*, and the FCC's recent Report and Order defining its good faith defense for reassigned liability absolves the Court of any hesitation in moving forward. Thus, there seems little chance that any guidance from the FCC, at some unknown, speculative, future date, would affect this case. Therefore, Plaintiff would be prejudiced, and the Court would be burdened, by preventing Plaintiff from continuing to pursue her case under these circumstances. Accordingly, the Court will not stay this

---

[2] This analysis would also extend to the issue of a good faith defense. *See Molnar v. NCO Fin. Sys., Inc.*, No. 13-CV-00131-BAS JLB, 2015 WL 1906346, at *6 (S.D. Cal. Apr. 20, 2015) (denying stay because "the Court [was] not persuaded that interpretation of whether a good faith exception exists require[d] the FCC's expertise, and [because] there [was] no imminent likelihood of agency clarification").

6

action pursuant to the primary jurisdiction doctrine.

## B. A Court's Inherent Authority to Stay Its Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Deciding whether to grant a stay pending the outcome of other proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. The party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Id.* at 255. In considering whether to grant a stay, a court will weigh the following factors: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

While a short stay in this case would likely cause little prejudice to Plaintiff, as the Court has noted, there is little indication that this stay would be short. There is no guarantee that any FCC action is on the horizon or would ultimately simplify "issues, proof, and questions of law in this case." *See id.* This is because the Ninth Circuit and the FCC have already provided the guidance this Court needs. Therefore, there is at least "a fair possibility" that a stay in this case would "work damage" to Plaintiff and the putative class members if the Court were to halt proceedings in this case. *Landis*, 299 U.S. at 255. As such, the Court is not persuaded that Defendant has made out a "clear case of hardship or inequity in being required to go forward." *Id.* at 254-55. Defendant argues that it will be prejudiced by continuing to defend against this lawsuit because the FCC, at some point in time, might rule on potentially relevant and dispositive issues in this case. That argument alone, however, is not a sufficient basis for claiming hardship or inequity. *See Lockyer v.*

*Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Further, although future action by the FCC and the Ninth Circuit may ultimately impact this case, the Court finds that, at this stage,[3] a stay would provide little benefit "to the orderly course of justice." *CMAX*, 300 F.2d at 268.

IV. **Conclusion**

The Court will not issue a stay based on the reasons stated above under either the primary jurisdiction doctrine or its inherent authority to stay its cases. If future developments before the FCC or the Ninth Circuit justify revisiting the request for a stay, either party may file an appropriate motion with the Court.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Stay (Doc. 40) is **denied**.

Dated this 17th day of January, 2019.

Honorable Steven P. Logan
United States District Judge

---

[3] The Court notes that this case is on the eve of its two-year mark.