**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joanne Knapper, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Cox Communications, Inc.,<br><br>Defendant. | No. CV-17-00913-PHX-SPL<br><br>**ORDER** |

**I.      Background**

On March 28, 2017, Plaintiff filed a complaint against Defendant for violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. 1.) Plaintiff alleges, on behalf of a class, that Defendant "routinely violates [the TCPA] by using an automatic telephone dialing system [or an artificial or prerecorded voice] to place non-emergency calls to numbers assigned to a cellular telephone service, without prior express consent." (Doc. 1 ¶¶ 3, 11.)

On June 28, 2018, Plaintiff filed a motion for class certification and appointment of class counsel. (Doc. 43.) On August 14, 2018, Defendant filed its response. (Doc. 58.) On August 30, 2018, Plaintiff filed her reply. (Doc. 61.) Both parties have filed supplemental authority notices. (Docs. 66, 67, 69, 72, 78, 79, 82, 86, 87.)

///

///

**II.     Discussion**

Plaintiff argues for certification under Federal Rule of Civil Procedure ("Rule") 23(b)(3). She seeks to bring this action on her own behalf, as well as on the behalf of the following class: "[a]ll persons and entities throughout the United States (1) to whom Cox Communications, Inc. placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Cox Communications, Inc. subscriber, (3) in connection with its efforts to collect a past due residential account balance, (4) via its Avaya dialers or with an artificial or prerecorded voice, (5) from March 28, 2013 through the date of class certification." (Doc. 43 at 2.) Defendant responds that individual issues concerning consent predominate, that Plaintiff is neither an adequate nor a typical class representative, and that a class action is not a manageable or superior way to proceed. (Doc. 58.) It also argues that none of its relevant call logs reflect actual calls made by Defendant to wrong numbers or that the purported wrong numbers are actually "wrong." (Doc. 58.) Defendant does not, however, challenge the class definition.

**III.    Analysis**

Rule 23 of the Federal Rules of Civil Procedure governs class actions. A member of a class may sue as a representative party if the member satisfies four prerequisites: numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012); Fed. R. Civ. P. 23(a). After satisfying the prerequisites, the plaintiff must then show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3). Under Rule 23(b)(3), a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for resolving the controversy. Fed. R. Civ. P. 23(b)(3).

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23[.]" *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2412 (2014); *see Comcast*

*Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The court must rigorously analyze the facts of a class action to ensure that it comports with Rule 23. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). In doing so, however, the court will consider merits questions only to the extent relevant to determining whether the proposed class has met Rule 23's requirements. *Amgen Inc.*, 568 U.S. at 465-66.

The TCPA prohibits "any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service …." 47 U.S.C. § 227(b). The TCPA creates a private right of action for statutory damages in the amount of $500 per violation (or up to $1,500 if the defendant violated this subsection willfully or knowingly). 47 U.S.C. § 227(b)(3).

### a. Rule 23(a)

#### 1. Numerosity

A proposed class satisfies the numerosity requirement if class members are so numerous that joinder would be impractical. Fed. R. Civ. P. 23(a)(1). While no absolute limit exists, numerosity is met when general knowledge and common sense indicate that joinder would be impracticable. *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009) (citing *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008)). Generally, forty or more members will satisfy the numerosity requirement. *Id.*

Plaintiff argues that "Defendant identified more than 600,000 cellular telephone numbers that it associates with its residential accounts, and that are likely wrong numbers." (Doc. 43 at 8.) She also argues that Defendant made millions of autodialed calls per year and thousands even after its own internal records designated those calls as wrong numbers. (Doc. 43 at 8.) Though Defendant argues that the putative class size is less than 600,000, it does not provide an exact estimate of the class size.

///

Here, the Court is satisfied, based on Defendant's call records, that the putative class members are sufficiently numerous to make joinder impracticable. Even assuming what the Court construes as Defendant's lowest estimate of the putative class—30% of 11,920 phone numbers (*see* doc. 58 at 8 n. 12)—that leaves 8,344 putative class members. Therefore, the Court finds that the putative class size here satisfies the numerosity requirement.

### 2. Commonality

A proposed class satisfies the commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). The claims must "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal–Mart*, 564 U.S. at 350) (internal quotations omitted). However, "even a single common question will do." *Wal–Mart*, 564 U.S. at 359 (internal quotations omitted).

Plaintiff argues that there are a host of common questions. (Doc. 43 at 9.) She argues that (1) whether Defendant used an ATDS; (2) whether each class member suffered the same alleged injury; and (3) whether liability for calls placed to wrong or reassigned telephone numbers attaches under the TCPA are all common questions. Defendant argues that consent issues lead to the conclusion that only individualized trials are appropriate here. (Doc. 58 at 19-20.) Thus, it argues, "no common questions of fact predominate." (Doc. 58 at 20.) It also argues that reassigned liability and what constitutes an ATDS have not yet been decided by the FCC, so there is no common question that could be answered. (Doc. 58 at 15-16.)

The Court finds that the commonality requirement is met. Whether Defendant used an ATDS or an artificial or prerecorded voice to allegedly call the putative class members would produce an answer that is "central to the validity of each claim in one stroke." *Mazza*, 666 F.3d at 588. As would whether liability attaches for wrong or reassigned numbers. This is so even if what triggers liability for wrong or reassigned numbers were to change.

4

Likewise, whether consent was or was not given is a common question applicable to the class. Lastly, all putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. (Doc. 43 at 9.) Thus, whether each class member suffered the same injury is also a "common contention." *Mazza*, 666 F.3d at 588. Therefore, commonality is satisfied.

### 3. Typicality

A proposed class satisfies the typicality requirement if the claims of the representative party are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). As long as the representative's claims are "reasonably coextensive with those of absent class members[,] they need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). In other words, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Plaintiff argues that her and the putative class members "were each harmed in the same way by Defendant's common practice." (Doc. 43 at 10.) She argues that because Defendant was attempting to reach someone else when it called her, just as with the putative class members, her claims are typical of the class. (Doc. 43 at 11.) Defendant argues that Plaintiff cannot represent the putative class of "wrong numbers" because she, unlike them, did not answer Defendant's calls and did not speak to a live agent. (Doc. 58 at 8, 16.) Her phone number, therefore, was never designated as a wrong number. (Doc. 58 at 8, 16.) Plaintiff replies that her telephone number was designated as a potentially wrong number and that, in any event, her class status is not defined by Defendant's internal codes. (Doc. 61 at 10.)

The Court finds that the typicality requirement is met. Here, Plaintiff is a not a customer of Defendant and alleges that Defendant did not have consent to call her before it dialed her phone number. (Doc. 43 at 4, 5; Doc. 58 at 2, 7.) She alleges that the putative class members were also wrongly contacted by Defendant. (Doc. 43 at 6; *see* Doc. 58 at 6-

8.) Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members. In other words, the alleged injury, if found, would necessarily be a result of a course of conduct that is not unique to any of them, *i.e.,* a result of Defendant's alleged unlawful calls. *See Parsons*, 754 F.3d at 685. This is so even if Plaintiff, perhaps unlike some of the other putative class members, did not talk with a call agent or otherwise inform Defendant about the wrong number. Plaintiff and those putative class members would still make similar legal arguments to prove Defendant's liability.[1] The fact that some of the proposed members might have different degrees of injuries, or none at all, does not render the claim or the alleged injury atypical. *Id.* at 686 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011)) (noting that "[d]iffering factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality.").

### 4. Adequacy

The adequacy requirement is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining this standard, the court asks: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

Plaintiff argues she has consistently communicated with her counsel, sat for deposition, responded to discovery requests, and is armed to "make all necessary decisions [in] this case with class members' best interests in mind." (Doc. 43 at 11-12.) She also states that her counsel is experienced and competent within the field of TCPA and has been appointed as class counsel in dozens of other consumer protection class actions. (Doc. 43 at 12.) Defendant does not dispute that Plaintiff's counsel is inadequate. It does argue, however, that Plaintiff and her counsel have concocted a plan to "catch" Defendant, so that

---

[1] The Court is unaware of, and Defendant has not pointed to, any requirement that a potential plaintiff call and inform the defendant that it has an incorrect phone number. Nor does Defendant articulate why that would affect liability, assuming Defendant had already called that person without its consent.

Plaintiff could cash in on a payday. (Doc. 58 at 2-3.)

The Court finds that the adequacy requirement is met. Defendant does not contend that Plaintiff and her counsel have any conflicts of interest or that they have not prosecuted this action vigorously. Instead, Defendant argues that Plaintiff and her counsel have acted unethically by engaging in gamesmanship by, essentially, bringing this case in bad faith. The Court is not persuaded that Plaintiff, nor her counsel, have engaged in bad faith or have otherwise acted without integrity or candor. The Court is unaware of any conflicts of interest and finds that, to date, Plaintiff and her counsel have vigorously prosecuted this action. There is no reason to believe that will not continue. Further, Plaintiff's counsel's declaration provides the Court with satisfaction that it is competent to vigorously prosecute this case. (*See* Doc. 43-4.)

### b. Rule 23(b)(3)

Finding that Plaintiff has met the four requirements of Rule 23(a), the Court turns to the Rule 23(b) analysis, which requires a finding that Plaintiff meet at least one of the three requirements under Rule 23(b). Here, Plaintiff argues that the class should be certified under Rule 23(b)(3). (Doc. 43 at 6.)

#### 1. Predominance

A class may be maintained under Rule 23(b)(3) where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If proof of liability would involve transaction-by-transaction analysis, then individual issues will predominate. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). If, however, liability can be established on a class-wide basis, common issues will predominate, and a class action will serve as the most efficient means of resolving the controversy. *Torres*, 835 F.3d at 1134; *Zinser v. Accufix Research Inst.*, Inc., 253 F.3d 1180, 1189 (9th Cir. 2001). This is so even if, at the damages stage, there are ultimately "non-injured" class members, and individualized damages' calculations are required. *Torres*, 835 F.3d at 1136; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362

(2011).

Plaintiff argues that Defendant's use of its dialing system, to place calls to her and the putative class members, causing them injuries, predominates in this case. (Doc. 43 at 12-13.) She argues that whether certain members gave consent does not defeat predominance because the putative class here is comprised of non-customers of Defendant "who necessarily did not provide Defendant with express consent to place calls" to their phones. (Doc. 43 at 13.) Plaintiff argues that even if there were individualized issues as to non-customers' consent, common issues would still predominate. (Doc. 43 at 13.) Further, Plaintiff argues that other issues—damages calculations, determinations as to the identity of the telephone users, when each call was made, whether Defendant actually made each call, and whether each call marked as a wrong number was, in fact, a wrong number—have routinely been found to not defeat predominance. (Doc. 43 at 14, citing cases.)

Defendant argues that its evidence of consent obliterates predominance and would require individual mini-trials. (Doc. 58 at 12, 14.) It argues that its records do not necessarily represent true wrong numbers or individuals Defendant actually called. (Doc. 58 at 7.) Further, Defendant's expert notes that there are many reasons why "wrong number" dispositions, as reflected in Defendant's records, are not accurate: (1) customers claim that their phone numbers are "wrong numbers" in order to avoid payment; (2) call agents mistakenly enter a "wrong number" disposition in their notes; (3) so-called "wrong numbers" can later place an incoming call to Defendant and "verify" the number; (4) no database is available to search for history of "subscribers"; and (5) there is no way to tell who the actual "user" of the phone was at the time Defendant allegedly called it. (Doc. 58, Ex. 6.) Defendant also argues that, even if Defendant made calls to a non-customer, an individualized inquiry would still be required because the Court would need to determine "whether that person was a former Cox customer who had previously consented to calls from Cox in connection with a past debt." (Doc. 58 at 18 n. 20.)

The Court finds that the predominance requirement is met. The Court agrees that a "wrong number" designation—or any designation in Defendant's call records that might

tip off the phone number's veracity—does not necessarily mean that the phone number will lead to a "correct" wrong number. But, Plaintiff has explained that those phone numbers can be analyzed through a reverse lookup service and that other methods can be used to sanitize the phone numbers, on a class-wide basis, to address the consent issue. While there will undoubtedly be differences in the amount of damages claimed by class members, differences on users, and which numbers were actually called, these issues can also be resolved on a class-wide basis. Indeed, courts have certified TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as "wrong number" in Defendant's call records may not have actually been a wrong number. *See Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016); *Abdeljalil v. Gen. Elec. Capital Corp*, 306 F.R.D. 303 (S.D. Cal. 2015); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 302 (N.D. Cal. 2017), leave to appeal denied sub nom. *Membreno v. California Serv. Bureau, Inc.*, No. 17-80258, 2018 WL 1604629 (9th Cir. Mar. 27, 2018).

Moreover, Defendant's reliance on its evidence of consent is misplaced. The evidence is not indicative of consent, given by non-customers of Defendant, prior to being called on their cell phones. Instead, it shows that phone numbers in Defendant's records dispositioned as "wrong number" or "unverified" were later dispositioned as "verified" phone numbers. Thus, the Court is not persuaded that its "unrefuted, demonstrative" evidence of consent in this case is detrimental to predominance. Even if Defendant's evidence was helpful here, Plaintiff's expert articulates how reverse lookups can be utilized to resolve consent or lack of consent on a class-wide basis. He explains how a reverse lookup service would be used to "determine if a name and associated physical address exists for each cell phone number [appearing in Defendant's records] at the time the calls were made." (Doc. 43, Ex. E at ¶ 17.) This process is done in conjunction with (1) subpoenaing wireless carriers to "obtain additional name and address information for the cellular telephone numbers at issue"; (2) checking the addresses against the National Change of Address database; (3) publicizing notice; (4) issuing a press release; (5) setting up a notice website; and (6) requiring claims forms, self-identifying affidavits, and

supporting documentation, which can include copies of telephone records from the claimants. (Doc. 43, Ex. E at ¶¶ 18-24.) Then, a reverse lookup service, Epiq for example, "can compare the names of claimants to [Defendant's] records to establish that a claimant is, or is not, a [subscriber of Defendant]." (Doc. 43, Ex. E at ¶ 24.) Thus, it seems unlikely that the issue of consent beyond the notice stage in this litigation would be a predominate issue. Accordingly, the Court finds Plaintiff's proposed methodology for resolving consent or lack thereof on a class-wide basis sufficient.

Defendant's expert also argues that the call records here reveal a substantial amount of phone numbers leading to individuals who were customers of Defendant and, thus, necessarily gave consent. He also argues that Plaintiff's proposed methods for analyzing Defendant's records is unreliable because major data aggregators, like Intelius, do not provide accurate reverse lookup services. (Doc. 58, Ex. 6 at ¶ 41.) However, the Court is not concerned with whether the reverse lookup process will produce perfectly accurate results. Instead, the industry standard shows that the major data aggregators can be used, in connection with other methods like subpoenaing wireless carriers and cross-referencing addresses, to reasonably identify the most likely subscriber of the phone number on the relevant call date. Defendant's expert does not challenge that the reverse lookup process is the industry standard and is commonly used in TCPA cases. Further, prior to August 2016 (the month of the Neustar system installation), Defendant's call agents manually kept records of a phone number's changing disposition. (Doc. 58 at 7.) The Court is thus not persuaded that Defendant's expert's analysis, which included analyzing phone numbers prior to August 2016, was overly prohibited by referencing call agents' notes.

Additionally, Defendant's expert explains that the putative class members represent individuals "who were not [Defendant's] customers [and] who allegedly received a telephone call in error." (Doc. 58, Ex. 6 at ¶ 37.) He argues that "[Defendant] has no information about who these alleged 'wrong parties' are and the methodologies [Plaintiff's expert] suggests he would use are completely unreliable." (Doc. 58, Ex. 6 at ¶ 37.) This is not true though. Plaintiff is a proposed class member who allegedly received a telephone

call in error and who, undisputedly, was never a customer of Defendant. Yet, Plaintiff's phone number was found in Defendant's records. Plaintiff's expert was then able to return a name and address for that phone number and verified that Plaintiff and her husband were the subscribers of the phone number for the entirety of the class period. (Doc. 61, Ex. A at 6.)

While Defendant's expert repeatedly argues that there is no way to guarantee that the subscriber of a phone number is also the "user" of the cellular phone, Plaintiff's expert states that reverse lookups provide reliable subscriber data indicating those individuals who may ultimately be in the class and, thus, who should be provided notice. (Doc. 61, Ex. A at 4.) As Plaintiff's expert explains, it would be "very odd" to not send subscribers of a phone number notice of this action simply because they might not end up being the "user" of the phone. (Doc. 61, Ex. A at 4.) As he explains, subscribers are typically in the best position possible to identify the phone's "user," if it is not the subscriber. (Doc. 61, Ex. A at 4.) For example, Defendant's expert explains that he has a family plan with AT&T. (Doc. 58, Ex. 6 at 23.) He states that, though he is the "subscriber" of his family plan, AT&T assigns his wife's, daughter's, and son-in-law's phone numbers to his account and "does not even know their names." (Doc. 58, Ex. 6 at 23-24.) Though AT&T might not know the "users" associated with each phone number, this example tends to prove the point that subscribers of a group calling plan can, or easily could, generally identify the names and addresses of the users on their own group calling plan.[2] Moreover, Defendant's expert has not refuted that subpoenaing wireless carriers and running reverse lookups are atypical in TCPA cases. This negates an argument that those methods are so unreliable that the Court should not rely upon them—at least when a plaintiff has proffered how the methods will be employed on a class-wide basis. Thus, the Court is unconvinced that Plaintiff's methods

---

[2] To this point, the Court notes that Defendant has not provided any evidence that agency issues are real and not simply skeptical. To the extent it is a real issue, self-identifying affidavits and notice to the subscriber (who likely has information and access to other "users" on its wireless account) can be used to identify the correct putative class member. If, however, agency issues start to predominate in this case, Defendant would be able to challenge it at the appropriate stage.

and Defendant's records should not be relied upon to provide phone numbers that can be gathered and analyzed on a class-wide, efficient, and likely accurate basis.

Lastly, regardless of how this Court interprets a "called party," the issue of consent is one that can be resolved on a class-wide basis. Even assuming Defendant is correct in arguing that the definition of "called party" is in flux while the Court waits for an FCC decision, it does not follow that class certification is defeated. This analysis also extends to the Court's interpretation of what constitutes an ATDS. The liability of Defendant is still a common issue in this case, regardless of the definitions of the terms establishing that liability. Further, Defendant does not use third-party vendors to make calls. Thus, whether an ATDS was used or a prerecorded or artificial message was left is common to the class because the calls were only made by Defendant. In any event, this Court has found that *ACA International* did not overturn the FCC's or the courts in this circuits' prior interpretation of "called party," which is the current subscriber of the phone and not the intended recipient. (Doc. 88 at 5.) This further negates any emphasis on the issue of consent given by Defendant's customers.

In sum, to the extent the evidence provided by Defendant shows that those callers gave consent, the Court finds that (1) the information can be analyzed on a class-wide scale and (2) that the method of how a caller provides consent can be identified by class-wide methods, as evidenced by Plaintiff's expert. This is further supported by the fact that Defendant argues that it "relies only on the phone numbers provided directly by its residential customers and does not—and never has—used third party-sources, such as skip tracing or caller identification services." (Doc. 58 at 6.) Thus, it appears likely that determining whether someone gave consent, and how, should not result in individual mini-trials because the issue of consent would likely be of little concern and could be traced to one source—Defendant's records. Should issues of consent arise that would lead Defendant to seek decertification, it may do so at that time. *See* Fed. R. Civ. P. 23(C)(1)(c), (C)(4), (C)(5) (stating that a certification order may be altered or amended before final judgment and that the class action may be maintained with respect to particular issues or

divided into subclasses). Defendant may also seek to challenge the class members' claims at any of the other appropriate stages of litigation. Thus, this Court finds that the issue of consent here is not so individualized, at this stage, that the Court cannot certify this class.

### 2. Superior Method

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is the superior method, a court considers: (1) the class members' interest in individually controlling the prosecution or defense; (2) the extent or nature of any litigation already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in this forum; and (4) the likely difficulties in managing a class action. *Id.* Where class wide litigation will reduce litigations costs and promote greater efficiency, a class action may be the superior method of litigation. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Plaintiff argues that a class action is a superior method because this case likely has over tens of thousands of class members. (Doc. 43 at 15.) She argues that each individual member has little incentive to control the litigation because all the claims are identical and result in a uniform damages calculation on a per-violation basis. (Doc. 43 at 15.) On that basis, she argues that, if this case were not certified, many claims will likely go unredressed. (Doc. 43 at 15-16.) Lastly, Plaintiff argues there would be little difficulty in managing this case because Defendant possesses the necessary and relevant records to efficiently and practically gather information regarding the telephone users. (Doc. 43 at 16.) Defendant argues that, because its consent evidence negates any finding of predominance, a class action here would not be a superior nor manageable method of litigation. (Doc. 58 at 14, 19-20.) Defendant also argues that this case is not manageable because its records are inaccurate or non-existent during certain, relevant periods of time. (Doc. 58 at 20.)

The Court finds that a class action would be a superior method of adjudicating Plaintiff and the putative class members' claims under the TCPA. Defendant appears to

focus on the last factor under Rule 23(b)(3); however, difficulty in identifying all class members is not dispositive of manageability or feasibility at this stage. *Briseno v. ConAgra Foods, Inc.*, 844 f.3d 1121, 1126 (9th Cir. 2017). The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues. Therefore, the Court finds that a class action is a superior method to adjudicate this matter.

**IV.  Conclusion**

Having reviewed the parties' briefing (docs. 43, 58, 61), the Court finds that Plaintiff has met the four Rule 23(a) requirements and has shown that the class should be certified under Rule 23(b)(3) for the reasons stated above.  Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Class Certification and Appointment of Class Counsel (Doc. 43) is **granted.**

2. Pursuant to Rules 23(a) and 23(b)(3), the Court certifies the class as: (1) all persons and entities throughout the United States, (2) to whom Cox Communications, Inc. placed a call (3) directed to a number assigned to a cellular telephone service, but not assigned to a Cox Communications, Inc. subscriber, (4) in connection with its efforts to collect a past due residential account balance, (5) via its Avaya dialers or with an artificial or prerecorded voice, (6) from March 28, 2013 through the date of class certification.

///

///

///

///

///

3. The Court appoints the law firm of Greenwald Davidson Radbil PLLC as class counsel pursuant to Rule 23(g).

Dated this 6th day of February, 2019.

_____
Honorable Steven P. Logan
United States District Judge