Michael L. Greenwald (*pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
(561) 826-5477
(561) 961-5684 (Fax)
mgreenwald@gdrlawfirm.com

Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
(512) 803-1578
(561) 961-5684 (Fax)
aradbil@gdrlawfirm.com

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joanne Knapper, *on behalf of herself and others similarly situated*, | ) )   Case No. 2:17-cv-00913-SPL ) |
| Plaintiff, | ) **PLAINTIFF'S UNOPPOSED MOTION** ) **FOR PRELIMINARY APPROVAL OF** |
| v. | ) **CLASS ACTION SETTLEMENT** ) |
| Cox Communications, Inc., | ) ) |
| Defendant. | ) ) |
| _____ | ) |

**Introduction**

After over two years of vigorously contested litigation, and as a result of extensive arm's-length negotiations following mediation before the Hon. Layn Phillips (Ret.), Joanne Knapper and Cox Communications, Inc. ("Cox") reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §

1

227. Ms. Knapper now seeks preliminary approval of the parties' class action settlement agreement ("Agreement").[1]

In short, the settlement calls for the creation of a $10.75 million, non-reversionary common fund from which participating Settlement Class Members will receive payments. Ms. Knapper and her counsel firmly believe the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. This is especially so in light of the substantial risks and uncertainties of protracted litigation, and given that participating Settlement Class Members stand to receive meaningful cash payments (an estimated $100-$300 each) as a result. Accordingly, Ms. Knapper respectfully requests that this Court enter the accompanying order granting preliminary approval to the settlement.

Notably, Cox does not oppose this relief.

## Summary of the Class Settlement

**I.     Ms. Knapper alleges that Cox violated the TCPA by placing autodialed calls and delivering prerecorded messages to wrong or reassigned cellular telephone numbers. Cox denies Ms. Knapper's allegations, denies it used an automatic telephone dialing system ("ATDS") to place the calls at issue, and denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain telemarketing practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[2] To that end, "[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using any automatic telephone dialing system or an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . . .'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011).

---

[1]     The Agreement and its exhibits are appended to the Declaration of Michael L. Greenwald, which is attached as Exhibit A. Capitalized terms in this motion have the same meanings as in the Agreement.

[2]     Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

Pertinent here, a caller has a complete defense to a TCPA claim if it can demonstrate that it made the subject calls with the prior express consent of the called party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).[3]

Ms. Knapper's claims are relatively straightforward: Cox placed calls to her cellular telephone number, via its Avaya Proactive Contact Dialers, even though she was not a Cox customer. Cox made these calls while attempting to reach its own customer, who Cox says provided Ms. Knapper's cellular telephone number as a contact number. At issue is whether these claims, and those of similarly situated consumers, violate the TCPA. Cox maintains that it did not violate the TCPA, that it was entitled to rely on consent that its customers provided, and that, regardless, class certification (other than for settlement purposes) is improper.

**II.    Despite facing significant obstacles to proving liability and maintaining class certification, Ms. Knapper's litigation efforts resulted in the $10.75 million settlement now before this Court, which will provide meaningful cash relief to participating Settlement Class Members.**

While Ms. Knapper strongly believes in her claims, *see* Docs. 99-100 (Ms. Knapper's motion for summary judgment), Cox vehemently disputes that it violated the TCPA. To that end, Cox raised a host of defenses, both on the merits and to class certification. For example:

- Cox moved for summary judgment on Ms. Knapper's claims, asserting, among other things, that it could reasonably rely on consent to call provided by its customers. Doc. 97-1 at 7-12. If this Court accepted Cox's position, Ms. Knapper's claims—and those of Settlement Class Members—would fail;

- Cox contended that the platform it utilized to make calls was not an ATDS, and that this Court should withhold judgment until the FCC further clarified the definition of an ATDS. If this Court agreed, Settlement Class Members' claims could be delayed or limited. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-cv-952-JDW-AAS, 2018 WL 4565751, at *7 (M.D. Fla. Sept. 24, 2018) (granting summary judgment in favor of the

---

[3]    The TCPA also exempts from liability calls "made for emergency purposes[.]" 47 U.S.C. § 227(b)(1)(A). However, the "emergency purposes" defense is not at issue here.

3

defendant and finding that the defendant did not place the calls at issue by using an ATDS);

- The Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order") included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. While the D.C. Circuit Court of Appeals invalidated that portion of the 2015 FCC Order in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018), it directed the FCC to reconsider whether and, if so, how, callers can reasonably rely on consent given by prior subscribers. Should the FCC institute an expansive, backward-looking safe harbor, Cox may have a viable defense based on the D.C. Circuit's ruling;

- Cox also contended that it maintains robust safeguards to ensure compliance with the TCPA. While Cox vehemently disputes any liability, to the extent any violations did occur, Cox argued that any violation of the TCPA was unintentional and would not support increased statutory damages. *See* Doc. 97-1 at 12-14;

- Ms. Knapper faced risks in maintaining class certification. Several courts in this Circuit have refused to certify similar TCPA class actions, making Cox's expected motion for decertification a real risk. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. C 18-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019);

- In addition, at the time the parties reached their settlement, Cox's petition for permission to appeal this Court's class certification order, Doc. 89, was pending before the Ninth Circuit Court of Appeals. The pendency of Cox's petition, which could have led to a reversal of this Court's certification order, was a meaningful risk affecting Settlement Class Members; and

- Cox moved to dismiss non-Arizona class members' claims for lack of personal jurisdiction. Doc. 93. Had this Court granted Cox's motion, which was fully briefed and pending at the time the parties' reached their agreement to settle, the class would have been far smaller, and non-Arizona class members would not have attained any relief.

Against this backdrop, and after extensive fact discovery, expert discovery, and motion practice, the parties attended a Court-ordered, in-person settlement conference on March 19, 2019. The parties then mediated this case on April 24, 2019 before Judge Phillips in New York.[4] During follow-up negotiations after the mediation, the parties

---

[4]    http://www.phillipsadr.com/bios/layn-phillips/ (last visited June 18, 2019).

reached an agreement in principle to resolve this matter. The parties filed a notice of settlement on May 7, 2019. Doc. 108.

## III. The settlement provides for a non-reversionary common fund of $10.75 million for the benefit of Settlement Class Members.

The Agreement defines a Settlement Class under Rule 23(b)(3) comprised of:

(1) All users of or subscribers to cellular telephones throughout the United States, (2) to whom Cox Communications, Inc. made or initiated at least one call to a cellular telephone, (3) via an automatic telephone dialing system or with an artificial or prerecorded voice, (4) from March 28, 2013 through March 21, 2019, (5) whose cellular telephone number was at any time associated with a Neustar score of 01 in Cox Communications, Inc.'s available records.

The Settlement Class excludes individuals who were ever Cox customers prior to March 22, 2019.[5]

Participating Settlement Class Members who aver that they received automated or prerecorded calls from Cox and who never were Cox customers prior to March 21, 2019, will receive a *pro-rata* share of the settlement fund, after attorneys' fees, costs, expenses, and an incentive award to Ms. Knapper are deducted. While the exact per-claimant recovery will not be known until Settlement Class Members are provided with an opportunity to submit claims, given historical claims rates in TCPA cases, each participating Settlement Class Member is likely to receive between $100 and $300. In exchange, Settlement Class Members will release their claims arising out of Cox's use of an ATDS or an artificial or prerecorded voice to place calls to their cellular telephones during the class period.

In the unlikely event that *pro rata* payments would exceed $2,500, participating Settlement Class Members would be entitled to recover in excess of $2,500 if they provide documentary evidence in the form of, for example, telephone records from their

---

[5]     While the Settlement Class definition differs slightly from that previously certified by this Court, *see* Doc. 89 at 14, the parties believe the Settlement Class definition more accurately and objectively describes those who received wrong-number calls from Cox and who were not Cox customers at any time prior to the end of the class period.

wireless carrier, screen shots from their cellular telephones, or other documentary evidence demonstrating that they received more than five calls from Cox. In such circumstances, participating Settlement Class Members who provide documentary evidence demonstrating that they received more than five calls from Cox would receive additional compensation in the form of a *pro rata* portion of the remaining funds after all participating Settlement Class Members receive $2,500 each.

Subject to this Court's approval, an award of attorneys' fees and expenses, and an incentive award for Ms. Knapper, also will be deducted from the common fund. To that end, Ms. Knapper will seek an incentive award of $20,000 in recognition for her tremendous service in prosecuting this case for more than two years, including, among all else, responding to two sets of written discovery requests, sitting for deposition, attending a settlement conference in Phoenix, and traveling to and attending mediation in New York. Class counsel also will seek the reimbursement of litigation costs and expenses not to exceed $55,000, and an award of attorneys' fees not to exceed 28 percent of the common fund. Of note, Cox has not agreed to the incentive award or an award of attorneys' fees, costs, and expenses. As such, it may oppose the requests. Moreover, this Court's approval of an incentive award, attorneys' fees, or litigation costs and expenses is not a condition of the settlement.

The Agreement also requires a robust notice program, including direct mail notice to each potential Settlement Class Member who can be identified through Cox's records, publication notice, and the creation of a dedicated settlement website and toll-free telephone number, through which Settlement Class Members can submit claims and obtain more information about this case and settlement.

Argument

**I.    This Court should conditionally certify the Settlement Class.**

This Court previously certified this matter as a class action and, in so doing, appointed Ms. Knapper as the class representative and her counsel—Greenwald Davidson Radbil PLLC ("GDR")—as class counsel. Doc. 89 at 14-15. While the

Settlement Class definition differs slightly from the class this Court certified, the revised class definition meets the requirements for class certification in the same way the certified class definition does. *See generally* Doc. 89.

More specifically, (1) the proposed Settlement Class is so numerous that joinder of all members is impracticable, as the parties estimate there to be approximately 140,000 members of the Settlement Class; (2) Settlement Class Members share questions of law and fact in common with one another and with Ms. Knapper; (3) Ms. Knapper's claims are typical of Settlement Class Members' claims; (4) Ms. Knapper has, and will continue to, fairly and adequately protect the interests of the Settlement Class; (5) questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Docs. 43, 61, 89.

And because certification is sought here in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Thus, and in light of this Court's previous findings, *see* Doc. 89, Ms. Knapper respectfully submits that this Court should conditionally certify the Settlement Class for settlement purposes.

## II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by

the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Then, once this Court makes the preliminary fairness evaluation, certifies the Settlement Class for settlement purposes, and Ms. Knapper issues notice to Settlement Class Members, this Court will hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34.

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014).

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of

possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture, Ms. Knapper and her counsel strongly believe that the resolution reached here is in the Settlement Class's best interests.

To that end, the Ninth Circuit has identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As well, Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

**A. The strengths of Ms. Knapper's case and the risks inherent in continued litigation against Cox, and maintaining class certification, favor preliminary approval.**

The first, second, and third *Hanlon* factors support preliminary approval. Of course, every class action involves some level of uncertainty, both on the merits and on the appropriateness of certification. This case is no different, as there was no guarantee that Ms. Knapper would maintain certification of the class through trial or that this Court, or the trier of fact, would find in Ms. Knapper's favor as to liability.

While Ms. Knapper strongly believes in her claims, *see* Docs. 99-100 (outlining her positions regarding liability), Cox vigorously disputes that it violated the TCPA. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions being issued from district courts on an almost daily basis.

Against that backdrop, Cox raised a host of defenses, both on the merits and to the maintenance of class certification, including:

- Cox moved for summary judgment on Ms. Knapper's claims, asserting, among other things, that it could reasonably rely on consent provided by its customers to call the telephone numbers at issue. Doc. 97-1 at 7-12;

- Cox contended that the platform it utilized to make calls was not an ATDS, and that this Court should withhold judgment until the FCC further clarified the definition of an ATDS;

- Cox maintained that the FCC could institute an expansive, backward-looking safe harbor, which would provide Cox with a viable defense to class members' claims;

- Cox also contended that it maintains robust safeguards to ensure compliance with the TCPA, which would not support increased statutory damages. *See* Doc. 97-1 at 12-14;

- Cox sought interlocutory review of this Court's class certification order. The pendency of Cox's petition before the Ninth Circuit created a risk that class certification would not be maintained through trial;

- Cox vowed to move to decertify the class after the issuance of class notice. *See* Doc. 92 at 1 ("Decertification Motions shall be due 15 days from the deadline for the opt-out period provided in the class notice plan."); and

- Cox raised jurisdictional arguments regarding non-Arizona class members' claims, which it sought to dismiss form this case. Doc. 93.

Thus, there can be little question that Ms. Knapper faced real risks in prevailing on her claims and maintaining certification through trial. The $10.75 million class fund, viewed in light of these risks, underscores the reasonableness of the settlement.

**B. The immediate, meaningful cash relief afforded by the settlement favors preliminary approval.**

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors preliminary approval. To reiterate, Cox will pay $10.75 million into a non-reversionary settlement fund to resolve this matter—an amount that is significant in its own right.

And despite the obstacles Ms. Knapper faced, she and class counsel, with the assistance of a highly respected mediator, negotiated a settlement that exceeds many analogous TCPA class action settlements. Specifically, dividing the settlement payment ($10.75 million) by 140,000 (the estimated number of Settlement Class Members who likely received wrong number calls from Cox) amounts to just under $77 per person.

In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015), the court granted final approval in a similar wrong-number TCPA class action for $2.63 per person (settling claims of 3 million class members for $7.9 million)—a small fraction of the amount Settlement Class Members will receive here. *See also Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (preliminary approval of wrong-number TCPA settlement amounting to $1.269 million, or approximately $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (preliminary approval of wrong-number TCPA settlement for $5.55 per person); *Johnson v. Navient Solutions, Inc., f/k/a Sallie Mae, Inc.*, No. 1:15-cv-0716-LJM (S.D. Ind.) (approximately $46 per class member).

Indeed, the settlement provides immediate cash relief to the Settlement Class. After deducting the requested attorneys' fees, litigation costs and expenses, and incentive award, class counsel estimate that participating Settlement Class Members should receive

between $100 and $300 each, an amount on the higher end of TCPA settlements generally. *See James*, 2016 WL 6908118, at *2 ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)).

Per-claimant recoveries in other TCPA class actions often fall within a lower range. *See, e.g.*, *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (less than $50 per TCPA claimant); *Arthur v. Sallie Mae, Inc.,* 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *Adams v. Allianceone Receivables Mgmt.*, *Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).[6]

In sum, the settlement here constitutes an objectively fair result for the Settlement Class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL

---

[6]      *See also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) ($34 million for more than 32 million class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($39.98 million for more than 9,065,262 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, Doc. 113 (S.D. Cal. May 30, 2014) ($11.66 million for 2,684,518 class members); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving settlement that provides up to $15 cash payment for TCPA violation); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261, Doc. 97 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Doc. 74 (N.D. Ill.) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, Docs. 61 at 3, 72 (W.D. Wash.) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, Doc. 114 (W.D. Wash.) ($40 or $80 merchandise certificate per claimant).

416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### C. The posture of this case and experience and views of counsel favor preliminary approval.

Next, the fifth and sixth *Hanlon* factors likewise support preliminary approval. After over two years of contested litigation—which included written discovery, depositions, expert reports and discovery, and significant motion practice—the settlement here was achieved with a clear view as to the strengths and weaknesses of Ms. Knapper's claims.

Thus, both class counsel—who have substantial experience in litigating class actions, particularly under consumer protection statutes[7]—and this Court are adequately informed to evaluate the fairness of the settlement. Moreover, both Ms. Knapper and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Judge Phillips, demonstrate the fairness of the settlement, and that the settlement is not a product of collusion. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *see also Bykov*, 2019

---

[7]     *See* Greenwald Decl. at ¶¶ 9-38.

WL 1430984, at *5-*6 ("participation in mediation tends to support the conclusion that the settlement process was not collusive"). As a result, Ms. Knapper and her counsel submit that the value of the recovery here—$10.75 million—reflects their confidence in Ms. Knapper's claims. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").[8]

### D. The settlement treats Settlement Class Members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal portion of the $10.75 million common fund after deducting attorneys' fees, costs, expenses, an incentive award to Ms. Knapper, and the costs of class notice and administration.

Only if Settlement Class Members stand to receive more than $2,500 each will participants be required to submit documentary evidence of the number of calls they received from Cox. In that instance, those Settlement Class Members who provide documentary evidence demonstrating receipt of more than five calls from Cox will receive a *pro rata* portion of the remaining funds available after each participating

---

[8]     The two remaining *Hanlon* factors—the presence of a governmental participant and the reaction of the class members to the proposed settlement—cannot be addressed at this stage because class notice has not been issued. *Hanlon*, 150 F.3d at 1026. Ms. Knapper will address the reaction of class members and any governmental entities in connection with her motion for final approval of the settlement.

14

Settlement Class Member receives $2,500. Thus, the allocation of the settlement proceeds treats Settlement Class Members fairly and equitably.

Moreover, the release affects each Settlement Class Member in the same way. As such, this factor supports preliminary approval.

**III.    This Court should approve the parties' proposed notice program.**

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator— Epiq Systems, Inc. ("Epiq")—which will use all reasonable efforts to provide direct mail notice to each potential Settlement Class Member.

First, Cox will provide to Epiq a listing of all cellular telephone numbers Neustar, Inc. originally associated with a score of 01, or in other words, a listing of those cellular telephone numbers "negatively linked" to the name and address Cox associated with the number. Consistent with the notice plan suggested by Ms. Knapper's expert witness Cameron Azari, *see* Doc. 43-5, Epiq will then use one or more third-party vendors to perform reverse look-ups of these telephone numbers to obtain names and addresses, which will be updated through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Each person identified through this process will be sent, via U.S. mail, a postcard notice with a detachable claim form in the forms attached to the Agreement as Exhibits 1 and 3. To submit a valid claim, Settlement Class Members must aver that they received calls from Cox on their cellular telephones and that they were not Cox customers.

Separately, Epiq will establish a dedicated settlement website through which Settlement Class Members can review relevant documents filed with this Court, review the question-and-answer notice (attached as Exhibit 5 to the Agreement), and submit claims.

In addition, Epiq will establish a toll-free phone number, through which Settlement Class Members can request additional information and have questions about the settlement answered. Finally, Epiq will institute a publication notice program by advertising the settlement in USA Today.

Thus, the parties have strived to make it as convenient as possible for Settlement Class Members to learn of and participate in the settlement. *See Williams*, 2019 WL 1450090, at *5 (approving materially identical notice plan in wrong number TCPA class action); *James*, 2016 WL 6908118, at *2 (same).

The plan complies with Rule 23 and due process because, among other things, it informs Settlement Class Members, directly, of: (1) the nature of this action; (2) the essential terms of the settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection or exclusion, including the time and method for objecting or requesting exclusion, and that Settlement Class Members may make an appearance through counsel; (5) information regarding Ms. Knapper's incentive award and her request for an award of attorneys' fees and expenses for her counsel; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, because this notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc.*, No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable

notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights.").

## IV.     This Court should schedule a final fairness hearing.

Lastly, the final step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). The parties respectfully request that this Court set a date for a hearing on final approval, at the Court's convenience, approximately five months after the Court's preliminary approval of the settlement.

**Conclusion**

Ms. Knapper respectfully requests that this Court enter the accompanying order granting preliminary approval to the class action settlement, conditionally certifying the Settlement Class, confirming its appointment of Ms. Knapper as class representative, and confirming its appointment of GDR as class counsel. As noted, Cox does not oppose this relief.

Dated: June 18, 2019                          Respectfully submitted,

                                              */s/ Michael L. Greenwald*

                                              Michael L. Greenwald (*pro hac vice*)
                                              Aaron D. Radbil (*pro hac vice*)
                                              Greenwald Davidson Radbil PLLC

                                              Counsel for Plaintiff and Class Counsel

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that on June 18, 2019, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to counsel of record.


*/s/ Michael L. Greenwald*
Michael L. Greenwald