Michael L. Greenwald (*pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
(561) 826-5477
(561) 961-5684 (Fax)
mgreenwald@gdrlawfirm.com

Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
(512) 803-1578
(561) 961-5684 (Fax)
aradbil@gdrlawfirm.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joanne Knapper, *on behalf of herself and others similarly situated*, | ) <br> ) Case No. 2:17-cv-00913-SPL <br> ) |
| Plaintiff, | ) **PLAINTIFF'S MOTION FOR** <br> ) **ATTORNEYS' FEES, COSTS,** |
| v. | ) **EXPENSES, AND AN INCENTIVE** <br> ) **AWARD** |
| Cox Communications, Inc., | ) |
| Defendant. | ) <br> ) |
| _____ | ) |

**Introduction**

Having secured a remarkable settlement through which Cox Communications, Inc. ("Cox") will pay $10.75 million for the benefit of consumers nationwide, Joanne Knapper seeks an award of attorneys' fees for her counsel—Greenwald Davidson Radbil PLLC ("GDR")—in the amount of 28% of the common fund, plus the reimbursement of reasonable litigation costs and expenses of $52,635.34. In addition, and for her service and dedication to the class, as well as in recognition for the tremendous result she helped achieve, Ms. Knapper seeks an incentive award of $20,000. These requests are

1

reasonable, justified, and in line with awards approved in analogous TCPA class actions in this circuit and nationwide, particularly given that the settlement at issue here was reached only after more than two years of hard-fought litigation that included certification of the class over Cox's objection. Moreover, following notice to Settlement Class Members,[1] to date, not one has objected to any part of the settlement or to the requests for attorneys' fees, costs, expenses, and an incentive award.[2]

For the reasons set forth below and in the Declaration of Michael L. Greenwald, attached as Exhibit A, this Court should approve the requests in their entirety.[3]

## Summary of the Settlement

Ms. Knapper's motion for preliminary approval of the class settlement details the terms of the parties' pact. *See* Doc. 115 at 2-6. To summarize, Cox will create a non-reversionary, $10.75 million common fund for the benefit of the following class:

> (1) All users of or subscribers to cellular telephones throughout the United States, (2) to whom Cox Communications, Inc. made or initiated at least one call to a cellular telephone, (3) via an automatic telephone dialing system or with an artificial or prerecorded voice, (4) from March 28, 2013 through March 21, 2019, (5) whose cellular telephone number was at any time associated with a Neustar score of 01 in Cox Communications, Inc.'s available records.

The Settlement Class excludes individuals who were ever Cox customers prior to March 22, 2019.

---

[1] Capitalized terms have the meaning given to them by the Settlement Agreement in this matter. *See* Doc. 115-1 at 14-48.

[2] The class notices specifically informed Settlement Class Members that Ms. Knapper would seek an award of attorneys' fees amounting to 28% of the common fund, and reimbursement of litigation costs and expenses not to exceed $55,000. The notices also stated that Ms. Knapper would seek an incentive award of $20,000. The deadline for objections is October 25, 2019.

[3] Pursuant to LRCiv 7.1(b)(2), Plaintiff will submit an agreed proposed order in connection with her motion for final approval of class action settlement that will also address the instant motion. The agreed proposed order will be in the form previously submitted as part of the Settlement Agreement. *See* Doc. 115-1 at 52-58.

Participating Settlement Class Members who aver that they received automated or prerecorded calls from Cox and who never were Cox customers prior to March 21, 2019 will receive a *pro-rata* share of the settlement fund, after deducting attorneys' fees, costs, expenses, and an incentive award to Ms. Knapper. While the exact per-claimant recovery will not be known until Settlement Class Members have had their full opportunity to submit claims, given historical claims rates in TCPA cases, each participating Settlement Class Member is likely to receive between $100 and $300, or more.

**Argument**

**I.   This Court should award attorneys' fees of 28% of the common fund.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[4] In the Ninth Circuit, a district court has the discretion to award attorneys' fees as a percentage of the common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming fee award of 28% of the common fund); *see also Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding attorneys' fees of 33.3% of $40 million common fund); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1046 (S.D. Cal. 2015) ("Because this Settlement has produced a common fund for the benefit of the entire class, the Court elects to award fees under the percentage-of-recovery method."); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (Teilborg, J.) ("Based on the Court's experience with this case, the seven years of history, and the unique and favorable settlement on behalf of Plaintiffs, the Court finds a fee award of 33.33% more than reasonable in this case.").

---

[4]   Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

3

And while the benchmark for percentage-of-recovery awards is 25 percent of the total settlement, this amount can be adjusted upward or downward depending on (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards in similar cases. *Vizcaino*, 290 F.3d at 1048-50; *see also Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (Jorgenson, J.) ("The 30% of the settlement fund requested by counsel is well within the range routinely approved in such cases."). Ms. Knapper respectfully submits that the settlement here is not ordinary, but extraordinary, and that an evaluation of the *Vizcaino* factors supports the attorneys' fee award requested here.

**A.   The tremendous result obtained for the benefit of Settlement Class Members supports the requested attorneys' fee award.**

In the face of significant legal hurdles, *see infra* Argument, Section I.B, GDR obtained an excellent result for approximately 140,000 Settlement Class Members after 2.5 years of hard-fought litigation. As an initial matter, the non-reversionary cash settlement fund—totaling $10.75 million—is noteworthy in and of itself, especially considering the changing legal landscape in which GDR litigated this matter. *See id.*

Moreover, the settlement compares very favorably on a per-class-member basis (calculated by dividing the total settlement fund by the number of potential class members) to similar TCPA class action settlements recently approved. Indeed, dividing the common fund ($10.75 million) by 140,000 (the approximate number of Settlement Class members who likely received wrong-number calls from Cox) results in more than $76 per person.

In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015), the Southern District of Florida granted final approval to a similar wrong-number TCPA class settlement for just $2.63 per person (settling claims of 3 million class members for $7.9 million). Numerous other approved TCPA class action settlements fall in a similar range. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (wrong-number TCPA class

4

action settlement amounting to approximately $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member, finally approved at ECF No. 55); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member, finally approved at ECF No. 103); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member, finally approved at ECF No. 90); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($2.95 per class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal.) ($4.15 per class member).

Also important, GDR estimates—based on historical claims rates—that after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and the requested incentive award to Ms. Knapper, participating Settlement Class Members who submit valid claims will receive between $100 and $300 each, and perhaps more—a figure toward the top end of the spectrum of approved TCPA class settlements. *See Couser*, 125 F. Supp. 3d at 1047 ("Class Members will receive approximately $13.75. As discussed above, this amount appears to be on the low end of monetary recovery for TCPA class action settlements."); *see also, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claiming class member); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that while "thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of

recoveries' in TCPA class actions"); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

Because the settlement constitutes an excellent result for Settlement Class Members that is toward the top of the range for similar TCPA settlements, it amply supports the attorneys' fee award requested here. *Accord Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding cash recovery of $24 per claimant in a TCPA class action—well below the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

**B.    The substantial risks involved in this litigation support the requested attorneys' fee award.**

The second *Vizcaino* factor—the risk involved in the litigation—supports the requested fee award. While Ms. Knapper strongly believes in her claims, *see* Docs. 99-100 (outlining her positions regarding liability), Cox vigorously disputes that it violated the TCPA. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions often being issued from district courts, and while the Federal Communications Commission ("FCC") considered numerous issues that could bear on this case.

Against that backdrop, Cox raised a host of defenses, both on the merits and to the maintenance of class certification, including:

- Its motion for summary judgment on Ms. Knapper's claims, asserting, among other things, that it could reasonably rely on consent to call provided by its customers. Doc. 97-1 at 7-12. If this Court accepted Cox's position, Ms. Knapper's claims—and those of Settlement Class Members—would fail, and Ms. Knapper and Settlement Class Members would recover nothing;

- Its contention that the platform it utilized to make calls was not an automatic telephone dialing system ("ATDS"), and that this Court should withhold

judgment until the FCC further clarified the definition of an ATDS. If this Court agreed, Settlement Class Members' claims could be delayed or limited;

- That the FCC's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order") included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. While the D.C. Circuit Court of Appeals invalidated that portion of the 2015 FCC Order in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018), it directed the FCC to reconsider whether and, if so, how, callers can reasonably rely on consent given by prior subscribers. Should the FCC institute an expansive, backward-looking safe harbor, Cox may have a viable defense based on the D.C. Circuit's ruling;

- Its contention that it maintains robust safeguards to ensure compliance with the TCPA, and its introduction of expert evidence on that point. While Cox vehemently disputes any liability, to the extent any violations did occur, Cox argued that any violation of the TCPA was unintentional and would not support increased statutory damages. *See* Doc. 97-1 at 12-14;

- That Ms. Knapper faced risks in maintaining class certification. Several courts in this Circuit have refused to certify TCPA class actions, making Cox's expected motion for decertification a real risk. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. C 18-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019);

- In addition, at the time the parties reached their settlement, Cox's petition for permission to appeal this Court's class certification order, Doc. 89, was pending before the Ninth Circuit Court of Appeals. The pendency of Cox's petition was a meaningful risk affecting Settlement Class Members; and

- Its motion to dismiss non-Arizona class members' claims for lack of personal jurisdiction. Doc. 93. Had this Court granted Cox's motion, which was fully briefed and pending at the time the parties reached their agreement to settle, the class would have been far smaller, and non-Arizona class members would not have obtained any relief.

It was in the face of these substantial risks—risks above those inherent in any contested litigation—that GDR secured the $10.75 million settlement at bar, further supporting the requested fee award. *See Gutierrez-Rodriguez v. RM Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) ("The Court finds further support for an upward departure in the substantial risks of continued litigation, as well as the high quality of representation by class counsel, who brought this

7

case on a contingency basis and received no compensation for their efforts for the approximately two years this case has been pending.").

### C. The contingent nature of the fee supports the requested award.

The third *Vizcaino* factor—the contingent nature of the representation—likewise supports the requested fee award.

To be sure, GDR faced a substantial risk of nonpayment for its years of work on this case because it handled this matter on contingency. *See* Ex. A at ¶¶ 9, 117. Not only did GDR devote an enormous amount of attorney time to this case, *see id.* at ¶¶ 42-102, 115, but it also invested over $52,000 in hard costs in this matter, *see id.* at ¶¶ 127-130— without any promise of repayment.

The contingent nature of GDR's work therefore supports the requested fee award. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *14 (N.D. Cal. Aug. 17, 2018) ("Fourth, this case was conducted on a contingent-fee basis against well-represented Defendants. To be sure, Class Counsel were capable of fronting the costs, but the financial risk of litigation was assumed by Class Counsel throughout the pendency of the action. Moreover, the representation has lasted for nearly three years and the case schedule was compressed, thereby requiring Class Counsel to forego work on other matters."); *Dakota Medical, Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 4180497, at *8 (E.D. Cal. Sept. 21, 2017) (awarding fees of 30% of common fund in TCPA class action and noting that "Class counsel here also faced a substantial risk of non-payment. As the court has already explained, this case was subjected to extensive and serious litigation, discovery, and motion practice. All three law firms representing the class here accepted the matter on a purely contingent basis. None would have been compensated at all absent a recovery for the class.").

To be sure, such a contingent fee arrangement "weighs in favor of the requested attorneys' fees award, because [s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered." *In re*

8

*Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012). As one district court noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990); *accord Clark v. City of L.A.*, 803 F.2d 987, 991 (9th Cir. 1986) ("The risk and delay involved in contingent fee arrangements have long been seen as justifications for the relatively large fees often resulting in contingency cases.").

This is especially true here, where GDR is a relatively small firm that includes five full-time attorneys. The amount of work the firm can handle at any given time is accordingly limited, so the time devoted to this case necessarily curtailed counsel's ability to accept other work. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) (noting that the district court properly considered "the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work)"); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *13 (S.D. Fla. Nov. 5, 2015) ("It is uncontroverted that the attorney time spent on the Action was time that could not be spent on other matters. Consequently, this factor supports the requested fee.").

**D.     GDR's efforts, experience, and skill support the requested fee award.**

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012). Here, GDR relied on its particular skill set in litigating this matter for 2.5 years, which included obtaining certification of the class over Cox's objection. *See* Ex. A, ¶¶ 42-102.

More specifically, GDR devoted tremendous time and resources to this case, including: (a) conducting an investigation into the underlying facts regarding Ms. Knapper's claims and class members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to class members' claims and Cox's defenses; (d) preparing and serving initial and supplemental written discovery requests to Cox; (e) researching and preparing Ms. Knapper's motion for class certification and appointment of class counsel, and reply in support; (f) researching and preparing Ms. Knapper's two motions for summary judgment; (g) researching and preparing oppositions to Cox's two motions to stay; (h) preparing responses to Cox's written discovery requests; (i) preparing for and taking the corporate representative deposition of Cox pursuant to Rule 30(b)(6); (j) preparing for and taking the deposition of Cox employee Orrin Gray; (k) hiring an expert witness and facilitating the expert witness's report; (l) pursuing third-party discovery through a subpoena to Verizon Wireless; (m) preparing for and defending Ms. Knapper's deposition; (n) preparing for and defending Ms. Knapper's expert's deposition; (o) preparing for and taking the deposition of Cox's expert witness; (p) preparing for and attending mediation in New York with Judge Layn R. Phillips (Ret.), including preparing a detailed mediation statement and reply memorandum; (q) opposing Cox's Rule 23(f) petition in the Ninth Circuit Court of Appeals; (r) researching and opposing Cox's motion to dismiss the claims of non-Arizona class members; (s) researching and opposing Cox's motion to compel certain class members' claims to arbitration; (t) preparing the parties' class action settlement agreement, along with the proposed class notices and claim form; (u) negotiating with class administration companies to secure the best notice plan practicable; (v) researching and preparing Ms. Knapper's motion for preliminary approval of the class action settlement, and counsel's detailed declaration in support; (w) preparing for and taking the confirmatory deposition of Cox employee Virginia Snedeker; (x) researching and preparing Ms. Knapper's motion for final approval of the class action settlement; (y) preparing the instant motion for approval of an award of attorneys' fees, reimbursement of litigation costs and expenses, and an incentive award

for Ms. Knapper; (z) closely monitoring evolving TCPA case law and its potential impacts on this case; (aa) closely monitoring decisions from the FCC and their potential impacts on this case; (bb) conferring with the class administrator to oversee the notice, claims, and administration process; (cc) repeatedly conferring with Ms. Knapper throughout this case; and (dd) conferring with class members to answer questions about the settlement process. Ex. A, ¶¶ 115-116.

These efforts, which included attaining certification of the class over Cox's strenuous objection, *see Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019), warrant the requested fee. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *2-*3 (N.D. Cal. Feb. 6, 2013) ("Thus, Class Counsel's extensive investigation, comprehensive discovery practice, and skillful preparation resulted in a favorable Settlement for the Class. In addition, Class Counsel investigated, researched, and filed a comprehensive motion for class certification. Despite the strong opposition to that motion, it was granted.").

As well, in addition to its intense efforts in this case, GDR's overall experience and skill weigh in favor of the requested award. *See* Ex A, ¶¶ 11-41. To that end, courts across the country have appointed GDR as class counsel in dozens of consumer protection class actions in the past five years, often praising the firm's experience and skill. *Id.*

For example, in *Ritchie v. Van Ru Credit Corp.*, also a TCPA class action led by GDR, Judge Stephen M. McNamee of this Court stated upon granting final approval to the settlement:

> I want to thank all of you. It's been a pleasure. I hope that you will come back and see us at some time in the future. And if you don't, I have a lot of cases I would like to assign you, because you've been immensely helpful both to your clients and to the Court. And that's important. So I want to thank you all very much.

No. CIV-12-1714 (D. Ariz. July 21, 2014) (attached as Exhibit B).

11

Similarly, in *Schwyhart v. AmSher Collection Services, Inc.*, Judge John E. Ott, Chief Magistrate Judge of the Northern District of Alabama, stated upon granting final approval to a TCPA settlement for which he appointed GDR as class counsel:

> I cannot reiterate enough how impressed I am with both your handling of the case, both in the Court's presence as well as on the phone conferences, as well as in the written materials submitted. . . . I am very satisfied and I am very pleased with what I have seen in this case. As a judge, I don't get to say that every time, so that is quite a compliment to you all, and thank you for that.

No. 2:15-cv-1175-JEO (N.D. Ala. Mar. 15, 2017) (attached as Exhibit C).

GDR's substantial experience and skill therefore support the requested fee award. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 ("Moreover, the case presents complexities that required skill from the prosecuting attorneys. . . . This Court and other courts within this district have recognized that litigating complicated matters, especially unprecedented issues, is a circumstance that points in favor of a larger percentage."); *Spears v. First Am. Eappraiseit*, No. 08-CV-00868-RMW, 2015 WL 1906126, at *2 (N.D. Cal. Apr. 27, 2015) (awarding 35% of $7,557,096.92 net settlement fund in a case where class counsel "faced at least three significant novel issues of law").

### E.  Awards in similar cases demonstrate the reasonableness of the requested fee award.

The final *Vizcaino* factor—awards in similar cases—firmly supports the requested fee award. In TCPA class actions, courts in this circuit routinely award fees equal to or in excess of the 28% requested here. *See, e.g.*, *Ritchie v. Van Ru Credit Corp.*, No. 2:12-CV-01714-PHX-SMM, 2014 WL 3955268, at *4 (D. Ariz. Aug. 13, 2014) (McNamee, J.) (awarding attorneys' fees of 28% of the common fund, plus the separate reimbursement of litigation costs and expenses); *see also, e.g.*, *Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-cv-01109-JST, 2019 WL 1369929, at *8 (N.D. Cal. Mar. 26, 2019) (awarding fees amounting to 30% of common fund); *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *8 (N.D. Cal. Sept. 27, 2018) (awarding 30% of common fund); *Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-00182-H-BLM,

2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) (awarding 28.8% of common fund); *Dakota Med., Inc.*, 2017 WL 4180497, at *8 (awarding 30% of common fund); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30% of common fund); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding 33% of common fund); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of common fund).

Courts outside the Ninth Circuit also routinely award fees in excess of 28 percent in TCPA class actions. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, ECF No. 67 (M.D. Fla. Aug. 27, 2019) (awarding attorneys' fees of 30% of settlement fund); *Gonzalez v. TCR Sports Broadcasting Holding, LLP*, No. 1:18-CV-20084-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding fees of one-third of common fund); *Todd S. Elwert DC, Inc. v. Alliance Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *5 (N.D. Ohio Sept. 21, 2018) (approving attorneys' fees of one-third of settlement fund); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awarding attorneys' fees of 30% of settlement fund); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-1175-JEO, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (awarding attorneys' fees of one-third of settlement fund); *Markos*, 2017 WL 416425, at *3 (awarding attorneys' fees of 30% of common fund because "the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the work performed by Class Counsel."); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third of common fund in attorneys' fees); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-cv-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33%); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than one-third); *Cummings v. Sallie Mae*, No. 1:12-cv-9984, ECF No. 91 (N.D. Ill. May 30, 2014) (awarding 33%); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, ECF No. 86

(N.D. Ill. Dec. 23, 2013) (awarding 33%); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-1925, ECF No. 243 (N.D. Ill. June 21, 2013) (awarding 33%); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, ECF No. 67 (S.D. Ill. Sept. 8, 2010) (awarding one-third); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, ECF No. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33%); *Holtzman v. CCH*, No. 1:07-cv-7033, ECF No. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33%).

These awards are in line with empirical evidence regarding the unique risks associated with TCPA class action litigation. To that end, the Northern District of Illinois performed an in-depth analysis of the risks associated with TCPA litigation to determine proper awards of attorneys' fees in TCPA class action settlements. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 805-807.

In assessing the risks associated with TCPA class actions, Judge Holderman explained:

> Class Counsel in this case faced a variety of serious obstacles to success in bringing the lawsuit, and faced the real prospect of recovering nothing. . . . Third, as Capital One has noted throughout this litigation, there are presently petitions before the FCC urging the FCC to (1) revise the TCPA's definition of "automatic telephone dialing system" to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers. Consequently, the longer this litigation were to continue, the longer Plaintiffs would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims.

*Id.* at 805.

After analyzing these serious risks inherent with TCPA litigation and surveying fee awards across the country, Judge Holderman determined that an appropriate risk-adjusted fee for TCPA class settlements is 36% of the common fund—up to the first $10 million in recovery (and 25% on the next $10 million). *Id.* at 807. Because the award of 28% of the settlement fund sought here is substantially less than the risk-adjusted fee found to be appropriate in *In re Capital One*, GDR's request is reasonable and this Court

should approve it. *See Ikuseghan*, 2016 WL 4363198, at *2 (citing *In re Capital One* and awarding attorneys' fees of 30% of TCPA common fund).

## II. This Court should approve the reimbursement of $52,635.34 in litigation costs and expenses.

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *Carlin*, 380 F. Supp. 3d at 1023; *see also Cabiness*, 2019 WL 1369929, at *8 ("An attorney is entitled to recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."). The award "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These costs can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees. *Torres v. Pick-A-Part Auto Wrecking*, No. 1:16-cv-01915-DAD-BAM, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018).

GDR requests the reimbursement of $52,635.34 in litigation costs and expenses necessarily incurred to prosecute and resolve this matter on behalf of the Settlement Class. Ex. A, ¶¶ 126-130 (documenting reimbursable litigation costs and expenses). These expenses include the filing fee for the complaint ($400); process server fees ($75); expert witness fees ($5,509); mediation fees for Judge Phillips ($24,005); deposition transcripts ($6,337.23); court admission and *pro hac vice* fees, and related costs ($432); subpoena-related costs ($306); PACER research costs ($290.60); telephone conference charges ($54.50); postage, Federal Express, and mailing costs ($126.23); photocopying costs ($8.66); and travel-related expenses for depositions, the in-person settlement conference, mediation, and the upcoming final fairness hearing, including meals during travel (total of $15,091.12). Of note, this case required travel from South Florida and/or Austin, Texas, often for multiple attorneys, to (1) Phoenix on three occasions (Ms.

1  Knapper's deposition, the in-person settlement conference, and the upcoming final
2  fairness hearing), (2) Denver (Plaintiff's expert's deposition), (3) New York City
3  (mediation), and (4) Atlanta on two occasions (depositions of Cox). *Id.*, ¶ 129.

4  Because GDR's litigation costs and expenses are eminently reasonable in a class
5  action like this and were necessary to the successful prosecution of this action, *see*
6  *Carlin*, 380 F. Supp. 3d at 1024, this Court should approve reimbursement for them.

7  Noteworthy, to date no class members have objected to GDR's request for
8  reimbursement of litigation costs and expenses, which are less than the $55,000 in costs
9  and expenses set forth in the class notices.

10 **III.   This Court should approve an incentive award to Ms. Knapper of $20,000.**

11  The Ninth Circuit has recognized that incentive awards "are intended to
12  compensate class representatives for work done on behalf of the class, to make up for
13  financial or reputational risk undertaken in bringing the action, and, sometimes, to
14  recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g
15  Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

16  Here, Ms. Knapper respectfully requests that this Court approve an incentive
17  award of $20,000 in recognition of her contributions toward the successful prosecution of
18  this litigation. Without Ms. Knapper's tenacious efforts, there would have been no
19  lawsuit—let alone a class recovery of $10.75 million for the benefit of consumers
20  nationwide. Her goal was to pursue this matter on a class-wide basis to seek redress for
21  consumers harmed by Cox's calling practices, and there can be no dispute that she
22  succeeded in her efforts.

23  But obtaining this result was no small feat. Ms. Knapper devoted considerable
24  time and energy to this case over 2.5 years, which included approving several iterations
25  of her class action complaint, participating in many strategy conferences with her
26  counsel, responding to two sets of written discovery requests directed to her, being
27  subjected to an invasive deposition, attending an in-person settlement conference in
28  Phoenix, and taking time off work to travel to New York to attend mediation. Ex. A, ¶¶

119-124. Ms. Knapper also assisted her counsel in protracted settlement negotiations with Cox for the good of the class before, during, and after mediation. In short, Ms. Knapper was an ideal and dedicated class representative throughout this case's long history.

Given Ms. Knapper's active participation in this matter, and as recognition for the superb results she delivered to the class, an incentive award of $20,000 is justified. *See Cross*, No. 2:15-cv-01270-RWS, ECF No. 103 (approving incentive award of $15,000 to TCPA class representative); *Markos*, 2017 WL 416425, at *3 (approving incentive awards of $20,000 each in TCPA class action); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award to TCPA class representative from $1 million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award in TCPA class action); *Hageman*, 2015 WL 9855925, at *4 ($20,000 incentive award to TCPA class representative); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 award to TCPA class representative); *Ritchie*, 2014 WL 3955268, at *3 ($12,000 incentive award to TCPA class representative).

This Court, therefore, should approve an incentive award of $20,000.

**Conclusion**

Ms. Knapper respectfully requests that this Court award her counsel attorneys' fees amounting to 28% of the $10.75 million common fund, approve the reimbursement of $52,635.34 in litigation costs and expenses reasonably incurred by her counsel, and approve an incentive award of $20,000 for her service to the class.

Dated: September 25, 2019             Respectfully submitted,

                                       */s/ Michael L. Greenwald*

                                       Michael L. Greenwald (*pro hac vice*)
                                       Aaron D. Radbil (*pro hac vice*)
                                       Greenwald Davidson Radbil PLLC

                                       Counsel for Plaintiff and Class Counsel

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2019, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to counsel of record.

                          */s/ Michael L. Greenwald*
                          Michael L. Greenwald