Michael L. Greenwald (*pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
(561) 826-5477
(561) 961-5684 (Fax)
mgreenwald@gdrlawfirm.com

Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
(512) 803-1578
(561) 961-5684 (Fax)
aradbil@gdrlawfirm.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Joanne Knapper, *on behalf of herself and others similarly situated*, | ) ) | Case No. 2:17-cv-00913-SPL |
| Plaintiff, | ) ) ) | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | ) ) | |
| Cox Communications, Inc., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Introduction**

After over two years of vigorously contested litigation—which included certification of a nationwide class of consumers—and as a result of extensive arm's-length negotiations following mediation before the Hon. Layn Phillips (Ret.), the parties reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In short, the settlement requires Cox Communications, Inc. ("Cox") to pay $10.75 million for the benefit of individuals nationwide who received autodialed or prerecorded calls from Cox but who were never Cox customers.

On July 12, 2019, this Court preliminarily approved the settlement and authorized the distribution of notice and claim forms to potential Settlement Class Members.[1] Doc. 120. In turn, Epiq Systems, Inc. ("Epiq")—the Court-appointed class administrator, *see id.* at 4—distributed class notice in accordance with this Court's preliminary approval order, and Settlement Class Members were provided until October 25, 2019 to submit claims.

As of the date of this filing, 10,930 Settlement Class Members submitted timely claims for their *pro rata* share of the settlement fund. After deducting notice and administration fees, as well as attorneys' fees, litigation costs and expenses, and an incentive award to Ms. Knapper—which are subject to this Court's approval and which Ms. Knapper addressed in a separate filing, *see* Doc. 121—each participating Settlement Class Member will receive approximately $660. This tremendous per-claimant recovery far exceeds that in most TCPA class action settlements that have garnered final approval, and represents a remarkable result for Settlement Class Members.

Moreover, only 10 potential Settlement Class Members excluded themselves from the settlement, while none objected to any aspect of it. Given this excellent result, and

---

[1]     Joanne Knapper previously filed the settlement agreement ("Agreement") with the Court. Doc. 115-1 at 14-48. Capitalized terms herein have the same definitions as in the Agreement.

considering the favorable reaction from Settlement Class Members, Ms. Knapper respectfully requests that this Court finally approve the settlement and enter a final judgment and order in the form agreed to by the parties.

Notably, neither Cox nor any Settlement Class Members oppose this relief.

<strong>Summary of the Case and Settlement</strong>

**I.     Ms. Knapper alleges that Cox violated the TCPA by placing autodialed calls and delivering prerecorded messages to wrong or reassigned cellular telephone numbers. Cox denies Ms. Knapper's allegations and denies it violated the TCPA.**

Ms. Knapper alleges that Cox placed calls to her cellular telephone number, via its Avaya Proactive Contact Dialers, even though she was not (and never was) a Cox customer. Cox made these calls while attempting to reach its own customer, who Cox says provided Ms. Knapper's cellular telephone number as a contact number. At issue is whether these calls, and those made to similarly situated consumers, violate the TCPA. Cox maintains that it did not violate the TCPA, that it was entitled to rely on consent that its customers provided, and that, regardless, class certification (other than for settlement purposes) is improper.

**II.     Despite facing significant obstacles to proving liability and maintaining class certification, Ms. Knapper's efforts resulted in the $10.75 million settlement now before this Court.**

While Ms. Knapper strongly believes in the merits of her claims, *see, e.g.*, Docs. 99-100 (Ms. Knapper's motion for summary judgment), Cox vehemently disputes that it violated the TCPA.

Against that backdrop, Cox raised a host of defenses, both on the merits and as to the propriety of class certification, including:

- Its motion for summary judgment on Ms. Knapper's claims, asserting, among other things, that Cox could reasonably rely on consent to call provided by its customers. Doc. 97-1 at 7-12. If this Court accepted Cox's position, Ms. Knapper's claims—and those of Settlement Class Members—would fail, and Ms. Knapper and Settlement Class Members would recover nothing;

- Its contention that the platform it utilized to place calls was not an automatic telephone dialing system ("ATDS"), and that this Court should withhold

3

judgment until the FCC further clarified the definition of an ATDS. If this Court agreed, Settlement Class Members' claims could be delayed or limited;

- That the FCC's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order") included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. While the D.C. Circuit Court of Appeals invalidated that portion of the 2015 FCC Order in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018), it directed the FCC to reconsider whether and, if so, how, callers can reasonably rely on consent given by prior subscribers. Should the FCC institute an expansive, backward-looking safe harbor, Cox may have a viable defense based on the D.C. Circuit's ruling;

- Its contention that it maintains robust safeguards to ensure compliance with the TCPA, and its introduction of expert evidence on that point. While Cox disputes any liability, to the extent any violations did occur, Cox argued that any violation of the TCPA was unintentional and would not support increased statutory damages. *See* Doc. 97-1 at 12-14;

- Its suggestion that Ms. Knapper faced risks in maintaining class certification. Several courts in this Circuit have refused to certify TCPA class actions, making Cox's expected motion for decertification a real risk. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. C 18-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019);

- Its petition for permission to appeal this Court's class certification order, Doc. 89, which was pending before the Ninth Circuit Court of Appeals at the time the parties reached their settlement. The pendency of Cox's petition was a meaningful risk affecting Settlement Class Members; and

- Its motion to dismiss non-Arizona class members' claims for lack of personal jurisdiction. Doc. 93. Had this Court granted Cox's motion, which was fully briefed and pending at the time the parties reached their agreement to settle, non-Arizona class members would not have obtained any relief.

Despite these substantial obstacles, and after extensive fact discovery, expert discovery, and motion practice, the parties mediated this case on April 24, 2019 before Judge Phillips in New York.[2] During follow-up negotiations after the mediation, the parties reached an agreement in principle to resolve this matter.

---

[2]    http://www.phillipsadr.com/bios/layn-phillips/ (last visited Nov. 6, 2019).

**III.    The settlement requires Cox to create a non-reversionary common fund of $10.75 million for the benefit of Settlement Class Members. Participating Settlement Class Members stand to receive approximately $660 each.**

The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

(1) All users of or subscribers to cellular telephones throughout the United States, (2) to whom Cox Communications, Inc. made or initiated at least one call to a cellular telephone, (3) via an automatic telephone dialing system or with an artificial or prerecorded voice, (4) from March 28, 2013 through March 21, 2019, (5) whose cellular telephone number was at any time associated with a Neustar score of 01 in Cox Communications, Inc.'s available records.

The Settlement Class excludes persons who were ever Cox customers prior to March 22, 2019.

Participating Settlement Class Members who averred that they received wrong-number calls from Cox and were never Cox accountholders will receive approximately $660 each,[3] which constitutes the pro-rata share of the $10.75 million settlement fund after deducting notice and administration costs, attorneys' fees, litigation costs and expenses, and an incentive award to Ms. Knapper. In exchange, Settlement Class Members will release claims arising out of Cox's use of an ATDS to place calls to their cellular telephones during the class period.

### Notice and Claims Administration

Epiq delivered notice to Settlement Class Members in accordance with this Court's preliminary approval order. *See* Declaration of Amanda Sternberg, attached as Exhibit A. The successful claims rate (over 7.8% of likely Settlement Class Members) demonstrates not only the effectiveness of the notice, but also Settlement Class Members' satisfaction with the settlement.

---

[3]    Because the per-claimant recovery exceeds $600, Epiq will withhold a percentage of each claimant's recovery for tax purposes. Claimants will be provided with information regarding how to seek a refund of this withholding from the IRS, where applicable.

*Direct Mail Notice*: After performing reverse telephone number look-ups on the telephone numbers provided to it by Cox as belonging to potential Settlement Class Members who could have received calls, Epiq mailed 382,574 postcards, which included summary notice of the settlement and a detachable claim form, to potential Settlement Class Members. *See* Ex. A, ¶ 14. Epiq re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable postcards were returned with a forwarding address. *Id.*, ¶¶ 14-15. For undeliverable postcards returned without a forwarding address, Epiq performed advanced address searches to locate updated addresses, and re-mailed postcards to any updated addresses obtained by this process. *Id.*, ¶¶ 14-16.

*Publication Notice*: To supplement the robust direct mail notice program, Epiq caused summary notice of the settlement to be published in the August 29, 2019 edition of *USA Today*. *Id.*, ¶ 6.

*Settlement Website*: Epiq established and maintains a website dedicated to the settlement—http://www.KnapperTCPASettlement.com—that includes information pertinent to Settlement Class Members such as court filings, as well as answers to frequently asked questions. *Id.*, ¶¶ 17-18. Settlement Class Members were able to file claims via the settlement website. *Id.*

*Toll-Free Information Line*: Epiq established and maintains a toll-free telephone number—(877) 830-7943—for Settlement Class Members to obtain information about the settlement. *Id.*, ¶¶ 19-20.

*Claims*: 10,930 persons submitted timely claims. *Id.*, ¶ 23.

*Exclusions*: Ten persons submitted potentially valid exclusion requests from the settlement. *Id.*, ¶ 21.

*Objections*: No Settlement Class Member objected to the settlement. *Id.*, ¶ 22.

*Class Action Fairness Act Notice*: Epiq timely served notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *Id.*, ¶ 5; *see also* Doc. 119-1. No government official, state or federal, objected to or raised an issue regarding the settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Argument

### I.    The settlement satisfies all requirements and merits approval.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement may be approved if it is "fair, reasonable, and adequate." *Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605, 608 (9th Cir. 2018).[4] To that end, the Ninth Circuit has identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As well, Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that federal courts favor settlements of class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors firmly support the conclusion that the settlement is fundamentally fair, reasonable, and adequate, and that this Court should approve it.

### A. The strengths of Ms. Knapper's case and the risks inherent in continued litigation against Cox, and maintaining class certification, favor final approval.

The first, second, and third *Hanlon* factors support final approval. Of course, every class action involves some level of uncertainty, both on the merits and on the

---

[4]    Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

appropriateness of class certification. This case is no different, as there was no guarantee that Ms. Knapper would maintain certification of the class through trial or that this Court, or the trier of fact, would find in Ms. Knapper's favor as to liability.

As noted above, Cox raised a host of defenses both on the merits and against the maintenance of class certification. *See* Summary of the Case and Settlement, Section II, *supra*. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions being issued from district courts on an almost daily basis—and the specter of FCC intervention through potential rulemaking.

Given these substantial risks and uncertainties, there can be little question that Ms. Knapper faced real difficulties in prevailing on her claims and maintaining certification through trial. The $10.75 million class fund, viewed in light of these risks, underscores the reasonableness of the settlement, and supports its approval.

## B. The immediate, meaningful cash relief afforded by the settlement—approximately $660 for each participating Settlement Class Member—favors final approval.

The fourth *Hanlon* factor—the amount offered in the settlement—also favors approval. To reiterate, Cox will pay $10.75 million to resolve this matter, an amount that is significant in its own right, and not ranks among the largest TCPA class action settlements in this Circuit, but also represents the largest achieved in this District. Importantly, no amount of this fund will revert to Cox.

And despite the obstacles Ms. Knapper faced, she and class counsel, with the assistance of a highly respected mediator, negotiated a settlement that exceeds many analogous TCPA class action settlements. Specifically, dividing the settlement payment ($10.75 million) by 140,000[5] (the estimated maximum number of Settlement Class

---

[5]    While the parties do not know the exact number of *bona fide* Settlement Class Members, they estimate a maximum of 140,000. *See* Agreement, Doc. 115-1 at 20, ¶ 2.32. To ensure that all potential Settlement Class Members received notice, notice was disseminated more broadly (as well as via publication and online). *See* Ex. A.

Members who may have received wrong number calls from Cox) amounts to just under $77 per person.

In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-CV-61797, Docs. 131, 161 (S.D. Fla. Jan. 30, 2015 and Dec. 18, 2015), the court granted final approval in a similar wrong-number TCPA class action for $2.63 per person—a small fraction of the amount Settlement Class Members will receive here. *See also, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (approximately $7 per class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, Doc. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($2.95 per class member); *Adams v. Allianceone Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Doc. 113 (S.D. Cal. Apr. 23, 2012) (approving settlement equal to approximately $1.48 per TCPA class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, Docs. 51, 59 (N.D. Cal. Feb. 19, 2014 and Aug. 29, 2014) ($4.15 per class member).

As well, after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and incentive award, *see* Doc. 121, participating Settlement Class Members will each receive approximately $660, which surpasses the high end of TCPA class action settlement recoveries generally. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per claimant falls "within the range of recoveries" in a TCPA class action); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that while "thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within

the range of recoveries' in TCPA class actions"); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements"); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (between $20 and $40 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (less than $50 per claimant).[6]

At bottom, the settlement constitutes a tremendous result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the approximately $660 recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Because this settlement provides superior results to many other approved TCPA settlements, the fourth *Hanlon* factor strongly favors final approval.

---

[6]     *See also Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving a TCPA class action settlement that provided up to $15 cash payment); *In re Jiffy Lube Int'l, Inc.*, No. 11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Doc. 74 (N.D. Ill. Nov. 5, 2012) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash. Oct. 22, 2013) ($50 cash recovery plus $13 in merchandise per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, Doc. 72 (W.D. Wash. July 27, 2012) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, Doc. 114 (W.D. Wash. Nov. 5, 2012) ($40 or $80 merchandise certificate per claimant).

1
2

**C. The posture of this case and experience and views of counsel favor final approval of the settlement.**

3
4

Next, the fifth and sixth *Hanlon* factors likewise support final approval of the settlement. After over two years of contested litigation—which included written discovery, depositions, expert reports and related discovery, and significant motion practice*, see* Doc. 121-1 at ¶¶ 42-102—the settlement here was achieved with a clear view as to the strengths and weaknesses of Ms. Knapper's claims. In fact, at the time the parties reached their settlement, they had completed discovery and briefed motions to dismiss, for class certification, to compel arbitration, to stay the case, to strike certain allegations, cross motions for summary judgment, and a petition before the Ninth Circuit under Rule 23(f). *See id*. As a result, the parties were thoroughly informed of the claims—and the risks associated with them—before they reached a settlement, and few junctures remained before the case would move to trial.

5
6
7
8
9
10
11
12
13

Thus, both class counsel—who have substantial experience litigating class actions, particularly those under consumer protection statutes, *see id*. at ¶¶ 11-41—and this Court are adequately informed to evaluate the fairness of the settlement. Moreover, both Ms. Knapper and class counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *See Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2014 WL 12704846, at *5 (C.D. Cal. Oct. 6, 2014) ("Class Counsel's experience and recommendation thus weigh in favor of finding the settlement fair.") (citing *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.")); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Further, the parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Judge Phillips, demonstrate the fairness of the

28

11

settlement, and that the settlement is not a product of collusion. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *see also Bykov v. DC Transp. Servs., Inc.*, No. 2:18-CV-1691 DB, 2019 WL 1430984, at *5-6 (E.D. Cal. Mar. 29, 2019) ("participation in mediation tends to support the conclusion that the settlement process was not collusive"); *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6442227, at *4 (N.D. Cal. Oct. 25, 2016) (same).

As a result, Ms. Knapper and her counsel submit that the substantial value of the recovery here—$10.75 million—reflects their confidence in Ms. Knapper's claims and the fairness of the settlement. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement."). Given that these opinions were informed by thorough discovery and the briefing of numerous aspects of the case, these factors support final approval of the settlement.

### D. The lack of a government participant supports final approval of the settlement.

While no governmental agency is a party to this lawsuit, Epiq notified all pertinent government officials of the settlement as required by CAFA. Doc. 119-1. No governmental entity raised objections or concerns about the settlement. This factor therefore supports final approval.

### E. The reaction of Settlement Class Members strongly supports final approval of the settlement.

After a robust notice program, more than 10,900 Settlement Class Members submitted claims, while only 10 people submitted potentially valid exclusion requests. No Settlement Class Members objected to any aspect of the settlement.

The lack of objections, and small number of exclusions, strongly support approval of the settlement. *See Arnold v. Ariz. Dep't of Pub. Safety*, No. CV-01-1463-PHX-LOA,

2006 WL 2168637, at *10 (D. Ariz. July 31, 2006) (Anderson, M.J.) ("The absence of any objections suggests that the class members are unopposed to terms of the Settlement Agreement. The absence of objections weighs in favor of approving the Settlement Agreement."); *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (Jorgenson, J.) (same).

Accordingly, this positive reaction supports final approval of the settlement.

### F.  The settlement treats Settlement Class Members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all Settlement Class Members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal and identical portion of the $10.75 million common fund after deducting attorneys' fees, litigation costs and expenses, an incentive award to Ms. Knapper, and the costs of class notice and administration. Moreover, the release affects each Settlement Class Member in the same way. As such, this factor supports final approval of the settlement. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### G.  Ms. Knapper and her counsel adequately represented the Settlement Class.

Lastly, Rule 23(e)(2)(A) requires that this Court determine that "the class representatives and class counsel have adequately represented the class." This Court previously found that Ms. Knapper and her counsel adequately represented the class in its

order certifying the class. Doc. 89 at 6-7. Since that order, and following additional contested briefing, and negotiation of the settlement, this Court's holding has only been strengthened. Based on the excellent results obtained for Settlement Class Members and the high-quality work necessary to do so, Ms. Knapper and her counsel have demonstrated that they adequately represented the class, and this Court should grant final approval to the settlement.

## II. Distribution of class notice more than satisfied due process requirements.

Pursuant to Rule 23(e), in granting preliminary approval, this Court directed that Epiq initiate the proposed notice plan, finding that it was "the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice" by the proposed settlement. Doc. 120 at 4; *see also Williams*, 2019 WL 1450090, at *5 (approving materially identical notice plan in wrong-number TCPA class action); *James*, 2016 WL 6908118, at *2 (same). Such notice must be—and was—the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Following this guidance, Epiq distributed notice in a manner that exceeded this standard. In particular, Epiq used all reasonable efforts to provide direct mail notice to each potential Settlement Class Member. *See generally* Ex. A. And Epiq supplemented this direct mail notice through publication notice, a dedicated settlement website, and toll-free telephone number. *Id*.

As a result of this robust notice campaign, more than 7.8% of likely Settlement Class Members submitted claims, further supporting approval. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (collecting cases approving settlements with claims rates between 2% and 4%); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-02999-GPC-KSC, Doc. 32 (S.D. Cal. Feb.

14

4, 2015) (approximately 1.2% claims rate); *Knuston v. Schwan's Home Serv.*, No. 12-cv-00964-GPCDHB, Doc. 151 (S.D. Cal. Feb. 5, 2015) (approximately 1% claims rate); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-cv-00248, Doc. 137 (S.D. Cal. Sept. 28, 2012) (approximately 1% claims rate); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

In summary, the notice plan amply protected Settlement Class Members' due process rights.

## Conclusion

Ms. Knapper respectfully submits that the settlement—which requires Cox to pay $10,750,000 into an all-cash, non-reversionary common fund—constitutes an excellent result for Settlement Class Members. And for the foregoing reasons, she respectfully requests that this Court finally approve the settlement and enter a final judgment and order in the form agreed to by the parties and submitted concurrently to this Court.


Dated: November 8, 2019                      Respectfully submitted,

                                             */s/ Michael L. Greenwald*

                                             Michael L. Greenwald (*pro hac vice*)
                                             Aaron D. Radbil (*pro hac vice*)
                                             Greenwald Davidson Radbil PLLC

                                             Counsel for Plaintiff and Class Counsel


## CERTIFICATE OF SERVICE

I certify that on November 8, 2019, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to counsel of record.

                                             */s/ Michael L. Greenwald*
                                             Michael L. Greenwald

15